IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| ANTHONY COWARD and WENDY COWARD,<br><br>    Plaintiffs,<br><br>v.<br><br>FORESTAR REALTY, INC.,<br>NEW TOWNE<br>PROPERTIES, LLC,<br>TEMCO ASSOCIATES,<br>LLC,<br>and JOHN DOES 1<br>THROUGH 15,<br><br>    Defendants. | CIVIL ACTION FILE NO.<br>4:15-CV-0245-HLM |

## ORDER

This case is before the Court on the Motion for

Sanctions for Spoliation of Electronically Stored

Information ("Motion for Sanctions") filed by Defendants

Forestar Realty, Inc. and Temco Associates, LLC (collectively, the "Forestar Defendants") [97].

## I. Background

### A. Procedural Background

On December 18, 2015, Plaintiffs filed this lawsuit. (Compl. (Docket Entry No. 1).) On November 6, 2017, the Forestar Defendants filed their Motion for Sanctions. (Mot. Sanctions (Docket Entry No. 97).) The briefing process for the Motion for Sanctions is complete, and the matter is ripe for resolution by the Court.

### B. Relevant Materials Submitted by the Parties

#### 1. Plaintiff Wendy Coward's Deposition

The Forestar Defendants filed excerpts from Plaintiff Wendy Coward's deposition. (Dep. of Wendy Coward

(Mot. Sanctions Ex. A (Docket Entry No. 97-1)).)[1]  Plaintiff Wendy Coward testified that she remembered having two small cameras installed at her mailbox and on the corner of her house.  (Id. at 37.)  According to Plaintiff Wendy Coward, they "just thought it would be easier to have video surveillance instead of trying to capture every time it rained and having to be up at 2:30 in the morning when you hear thundering and lightening [sic], wondering if it was all coming in the garage or if it was mud or what was going on at that point . . .."  (Id.)  Plaintiff Wendy Coward

---

[1]    The Forestar Defendants filed all of their exhibits in one single docket entry.  (Mot. Sanctions Exs. (Docket Entry No. 97-1); Reply Supp. Mot. Sanctions Exs. (Docket Entry No. 104-1).) This is procedurally improper and causes the Court unnecessary difficulties in locating, and in citing to, exhibits.  The Court directs counsel to file all exhibits in separate docket entries, rather than simply filing all the exhibits as one docket entry.   The Court also notes that, while Plaintiffs filed their exhibits as separate docket entries, each docket entry for an exhibit should include a brief description of what that exhibit is or what it contains.

testified that she did not know the whereabouts of the camera or the recordings, and that she did not know approximately when the cameras were put up, and that the cameras were up for "[m]aybe a day or two." (Id. at 38.) Plaintiff Wendy Coward stated that Plaintiffs took the cameras down "[b]ecause they weren't useful," as "it would rain and the video would have rain in it and you couldn't see." (Id.) Plaintiff Wendy Coward stated that it rained on the days that Plaintiffs had the cameras up. (Id.)[2]

---

[2]   Plaintiffs also submitted excerpts from Plaintiff Wendy Coward's deposition; however, those excerpts do not add new, relevant information. (Dep. of Wendy Coward (Docket Entry No. 103-3).)

4

### 2.   Deposition of Plaintiff Anthony Coward

The Forestar Defendants also presented excerpts from the deposition of Plaintiff Anthony Coward.   (Dep. of Anthony Coward (Mot. Sanctions Ex. B (Docket Entry No. 97-1).)  During Plaintiff Anthony Coward's deposition, the following exchange occurred:

> Q.   So no other cameras like on your mailbox or anywhere else?
>
> A.   I did put them up for 30 seconds and it was not what I wanted so then they came down.
>
> Q.   What do you mean?  Where did you put a camera at?
>
> A.   We thought about putting cameras up and we did put one on the mailbox and one at the corner of our house and they came down.
>
> Q.   When did you put them up?

A.   Probably -- I can't remember.  It was close to -- probably a couple of months after we retained him (pointing to [Plaintiffs' counsel]).

Q.   So during the course of the lawsuit you had a camera on your mailbox and one at the corner of your house; correct?

A.   They stayed up for one night.

Q.   You had a camera on your mailbox and your house; correct?

A.   Yes.

Q.   And you testified the camera was there one night?

A.   It was there for one night, one or two.  It did not stay up because it was a waste of time.  The cords ran through the yard.

Q.   Why did you put the cameras up?

A.   I thought it would be easier than standing in lightening [sic] to video the water flow.

Q.   How certain are you that the cameras were only up one night?

6

A. I am pretty certain. They were not up very long. I mean, it was one or two nights. Then they came down because, number one, the cords were running through the yard and the homeowners association is not going to allow it.

Q. Did you turn over the videos from those nights?

A. There was no video of rain or anything that happened.

Q. Did you turn over the videos?

A. No.

Q. How many hours of video were recorded?

A. That night? Not much. I mean, probably six, seven, eight hours, something like that.

Q. What happened to those videos? Do you still have them?

A. I would imagine.

Q. Are they on a hard drive or on a disk?

A.   I'm not sure what they are on.   There is nothing there but yeah, I will give them to him.

(Id. at 66-68.)[3]

### 3.   Deposition of Jon Vansant

The Forestar Defendants submitted excerpts from the deposition of Jon Vansant with their reply.   (Dep. of Jon Vansant (Docket Entry No. 104-1).)   Jon Vansant stated that he "was aware there was cameras and videos taken."   (Id. at 21.)   Jon Vansant testified that he remembered seeing cameras on Plaintiffs' mailbox and house.   (Id.)   Jon Vansant estimated that the cameras were there five or six months, stating that he "was out there daily."   (Id. at 22.)   Jon Vansant guessed that the

---

[3]   Plaintiffs also submitted excerpts from Plaintiff Anthony Coward's deposition; however, those excerpts do not add new relevant information.   (Dep. of Anthony Coward (Docket Entry No. 103-4).)

cameras were up "somewhere from spring of 2015 into the fall of 2015." (Id.)

### 4.    Deposition of Henly Vansant

The Forestar Defendants presented excerpts from the deposition of Henly Vansant in support of their reply. (Dep. of Henly Vansant (Docket Entry No. 104-1).) Henly Vansant testified that he observed a camera system on Plaintiffs' mailbox and house. (Id. at 29.) Henly Vansant did not know the date and the month when he observed the system, guessing that "it might be late '16, but it could have been the spring of '17," and stating that he did not know how long the camera system remained in place. (Id. at 30.) Henly Vansant testified that Jon Vansant mentioned that Plaintiffs had a camera system, and then,

9

one or two weeks later, Henly Vansant went out there and saw the system. (Id.)

### 5.   July 27, 2015, Letter

On July 27, 2015, Plaintiffs' counsel sent a Demand to Abate Nuisance and Trespass to Defendants. (Docket Entry No. 103-7.)

### 6.   October 12, 2017, Letter

On October 12, 2017, the Forestar Defendants' counsel sent a letter to Plaintiffs' counsel stating, in relevant part:

> At their deposition, both [Plaintiffs] stated that they had installed a camera system on their home and mailbox for the purpose of recording "water flow" in the street. The cameras were installed during the pendency of this case and after you were retained to represent them in this matter. [Plaintiffs] testified the camera system was in place during rain events but that they had not produced the videos to us. To date, those

> videos have not been produced, leaving us with
> the impression that the videos have been lost or
> destroyed.

(Docket Entry No. 103-5 at 2.)

### 7. October 31, 2017, Letter from Plaintiffs' Counsel

The Forestar Defendants presented a letter from Plaintiffs' counsel dated October 31, 2017. (Mot. Sanctions Ex. C (Docket Entry No. 97-1).) That letter stated, with respect to the videos:

> Plaintiffs have diligently attempted to access the
> files on this camera system. Unfortunately, due
> to the amount of time that has passed since they
> obtained the system and the fact that it is
> password-protected, [Plaintiffs] are no longer
> able to retrieve and/or copy the files. We will
> bring the video hard drive to the upcoming
> deposition of Chris White, which as you know
> will occur on Thursday, November 2, starting at
> 1:00 p.m. You are welcome to take the drive
> and attempt to access the videos thereon as

11

long as you agree to return the drive to [Plaintiffs] once your analysis is complete.

(Id. at 2.)[4]

### 8. October 31, 2017, Letter from the Forestar Defendants' Counsel

The Forestar Defendants presented a letter from their counsel dated October 31, 2017. (Mot. Sanctions Ex. D (Docket Entry No. 97-1).) The letter stated, in relevant part:

> Turning to the documents and videos that [Plaintiffs] have not produced to date, your characterization that [Plaintiffs] cannot access the files from their camera system because of the passage of time and password-protection is not a legal justification for the spoliation that apparently has occurred. [Plaintiffs] testified that the camera system was installed **after the case had been filed and after your firm was retained in this matter**. We are concerned that

---

[4]   Plaintiffs also produced a copy of this letter. (Docket Entry No. 103-6.)

[Plaintiffs] were either not advised that a litigation hold was in place or that they ignored instructions to preserve photographs and videos that were created during the pendency of the litigation. Furthermore, you [sic] statement that the videos are password protected[] leaves us to conclude that [Plaintiffs] set the password and are the only persons able to unlock the system. And, your offer to provide a password protected video system to us[] misapprehends the burden of discovery – it is [Plaintiffs'] duty to provide the videos to us and not the Forestar Defendants' duty to attempt [to] recover videos from [Plaintiffs'] system.

(Id. at 1-2 (emphasis in original).)

### 9.   Affidavit of Wendy Coward

Plaintiff Wendy Coward also filed an affidavit. (Aff. of Wendy Coward (Docket Entry No. 103-1).) Plaintiff Wendy Coward stated that Plaintiffs "obtained a refurbished, Samsung-branded camera system" on or about May 15, 2015. (Id. ¶ 7.) The system had "at least

13

three cameras and a hard drive for storing the images taken by the cameras," and "[t]he hard drive is password-protected." (Id.)  Plaintiffs set up the camera system "to capture areas that were flooding during rain events." (Id. ¶ 8.)   According to Plaintiff Wendy Coward, Plaintiffs "believed that installing the cameras to capture these flooding events was safer than going outside with our personal cameras each time a rain storm event occurred, particularly given the presence of lightning and slippery conditions that had resulted in several falls."   (Id.) Plaintiffs set up the cameras "[s]oon after May 15, 2015," mounting the cameras on their mailbox, on the garage side of the house, and on [their] porch."   (Id. ¶ 9.) Plaintiffs took the cameras down a day or so later "because the system was cumbersome and required

wires running throughout [their] front yard." (Id. ¶ 10.) Plaintiffs did not access the system from the time they removed it until their depositions on September 21, 2017. (Id. ¶ 11.) Plaintiffs attempted to access the system after their depositions, but they cannot remember the password to access it. (Id. ¶ 12.) Plaintiffs have tried a number of passwords and have called the manufacturer twice to obtain a password reset. (Id. ¶ 13.) Plaintiff Wendy Coward further states that Plaintiffs "are working diligently to access and copy any pertinent video files that may exist." (Id. ¶ 14.)

### 10. Affidavit of Anthony Coward

Plaintiff Anthony Coward also provided an affidavit. (Aff. of Anthony Coward (Docket Entry No. 103-2).) Plaintiff Anthony Coward stated that Plaintiffs "obtained a

refurbished, Samsung-branded camera system" on or about May 15, 2015.  (Id. ¶ 7.)  The system had "at least three cameras and a hard drive for storing the images taken by the cameras," and "[t]he hard drive is password-protected."  (Id.)  Plaintiffs set up the camera system "to capture areas that were flooding during rain events."  (Id. ¶ 8.)  According to Plaintiff Anthony Coward, Plaintiffs "believed that installing the cameras to capture these flooding events was safer than going outside with our personal cameras each time a rain storm event occurred, particularly given the presence of lightning and slippery conditions that had resulted in several falls."  (Id.) Plaintiffs set up the cameras "[s]oon after May 15, 2015," mounting the cameras on their mailbox, on the garage side of the house, and on [their] porch."  (Id. ¶ 9.)

16

Plaintiffs took the cameras down a day or so later "because the system was cumbersome and required wires running throughout [their] front yard, which [they] believed would be a violation of [their] homeowners' association covenants." (Id. ¶ 10.) Plaintiffs did not access the system from the time they removed it until their depositions on September 21, 2017. (Id. ¶ 11.) Plaintiffs attempted to access the system after their depositions, but they cannot remember the password to access it. (Id. ¶ 12.) Plaintiffs have tried a number of passwords and have called the manufacturer twice to obtain a password reset. (Id. ¶ 13.) According to Plaintiff Anthony Coward, Plaintiffs "are working diligently to access and copy any pertinent video files that may exist." (Id. ¶ 14.)

17

## II.   Discussion

### A.   The Parties' Positions

The Forestar Defendants argue that Plaintiffs had a duty to preserve the videos and that the Forestar Defendants suffered substantial prejudice from the loss of the videos.  (Br. Supp. Mot. Sanctions (Docket Entry No. 97) at 1-3, 7-8.)  The Forestar Defendants contend that Plaintiffs installed the camera system after retaining counsel. (Id. at 5.)   The Forestar Defendants argue that Plaintiffs have not been able to access the videos, and contend that the videos that Plaintiffs have produced do not replace the lost videos.  (Id. at 8.)  According to the Forestar Defendants, Plaintiffs' offer to produce the system to the Forestar Defendants to allow them to attempt to unlock it does not comply with Federal Rule of

Civil Procedure 34(a)(1)(A).  (Id. at 8 n.1.)  The Forestar Defendants argue that Plaintiffs cannot demonstrate that the lost evidence is irrelevant, and argue that footage of rain events is clearly relevant.  (Id. at 9-10.)  According to the Forestar Defendants, the videos "would have shown an unedited entire rain event" and could have shown that: (1) Plaintiffs' improper driveway design caused the flooding; (2) the Forestar Defendants' installation of swales did not impact stormwater runoff to Plaintiffs' street and residence; (3) the requirements of the General Permit were in place and functioning properly; (4) sediment-laden stormwater was not present during a rainfall event; and (5) other entities or homebuilders were solely responsible for Plaintiffs' damages or the violations.  (Id. at 10.)

19

The Forestar Defendants contend that sanctions are required under Federal Rule of Civil Procedure 37(e)(1), at a minimum.  (Br. Supp. Mot. Sanctions at 11.)  The Forestar Defendants argue that Plaintiffs' actions were culpable because "Plaintiffs installed the camera system for litigation purposes after the case was filed."  (Id. at 12.)  The Forestar Defendants also argue that "the facts here support the conclusion that Plaintiffs acted with intent to deprive the Forestar Defendants [of the] use of the videos, justifying the more serious sanctions available under Rule 37(e)(2)."  (Id. at 13.)  The Forestar Defendants request that the Court either: (1) find that Plaintiffs acted intentionally, and order "(A) a presumption that the lost information was unfavorable to [Plaintiffs]; (B) an instruction to the jury that it must presume the

information was unfavorable to [Plaintiffs]; and (C) the costs and attorneys' fees associated with [the] Motion be taxed to [Plaintiffs]" (id. at 14); or (2) find Plaintiffs did not act with intent, and order: "(A) an instruction to the jury that the video was not preserved; (B) an allowance for the Forestar Defendants to present evidence and argument at trial regarding [Plaintiffs'] destruction of, or failure to preserve, the videos; (C) the preclusion of any evidence or argument that the contents of the video corroborated Plaintiffs' version of events; and (D) the costs and attorneys' fees association [sic] with [the] Motion be taxed to [Plaintiffs]" (id. at 15).

In response, Plaintiffs argue that no evidence supports the Forestar Defendants' spoliation contentions or an award of sanctions. (Resp. Mot. Sanctions (Docket

Entry No. 103) at 2.)  According to Plaintiffs, the "Motion is little more than aggressive litigation posturing designed to intimidate and harass [Plaintiffs]."  (Id.)

Plaintiffs note that they acquired the camera system on or about May 15, 2015, and that they left it up for a couple of days and then stopped using it.  (Resp. Mot. Sanctions at 3-4.)  Plaintiffs stated that they did not file their Complaint until December 18, 2015.  (Id. at 4.) Plaintiffs note that they have attempted to retrieve the videos on the system, but that the system is password-protected and they cannot recall the password.  (Id.) Plaintiffs stated that they offered the hard drive to Defendants' counsel, who refused it.  (Id. at 5.)

Plaintiffs argue that Rule 37(e) only applies where electronically stored information is lost, and notes that the

22

information at issue here is not lost.  (Resp. Mot. Sanctions at 7.)   Plaintiffs simply cannot access it because they cannot recall the password.  (Id.) According to Plaintiffs, offering the hard drive to the Forestar Defendants for analysis satisfies Plaintiffs' obligations under Rule 34(a)(1)(A).  (Id. at 8.)  Plaintiffs argue that the temporary difficulties in obtaining the video files from the system do not equate to spoliation.  (Id.)

Alternatively, Plaintiffs argue that they had no duty to preserve evidence when the videos were taken.  (Resp. Mot. Sanctions at 9.)  Plaintiffs argue that they recorded the videos before they retained counsel.  (Id.)  According to Plaintiffs, "any videos on the hard drive were recorded well before the duty to preserve was triggered."  (Id. at 10.)

23

Plaintiffs also argue that the Forestar Defendants suffered no prejudice.  (Resp. Mot. Sanctions at 10-12.) Plaintiffs note that they did not act in bad faith.  (Id. at 11.) Plaintiffs state that "it is not clear that videos on the system would show any rain event, let alone 'key footage of a complete rainfall event.'"  (Id.)  Plaintiffs argue that the Forestar Defendants "were present at, and have equal or superior knowledge of, all on-site rain events that have occurred," and that the General Permit required the Forestar Defendants "to observe, document, and report all discharges to Little Pumpkinvine Creek that flowed through [Plaintiffs'] property."  (Id.)  According to Plaintiffs, the Forestar Defendants fail to mention that Plaintiffs "have produced dozens of photographs and videos of flooding at their property taken over several

24

years." (Id. at 12.)  Plaintiffs note that it is not clear how the footage would show how the swales impacted the stormwater runoff, noting that the cameras were active for a short time and the installation of the swales was not completed until 2016.  (Id.)  Plaintiffs contend that the Forestar Defendants' argument that the videos could show that erosion and settlement controls were in place and functioning properly, that there was no sediment-laden stormwater, and that others were responsible for Plaintiffs' damages, "is conjecture, speculation, and wishful thinking." (Id. at 13.)

Plaintiffs also argue that forgetting a password after several years is not the same as deleting evidence. (Resp. Mot. Sanctions at 14-15.)  Plaintiffs further contend that they did not act with intent to deprive the

Forestar Defendants of any evidence.   (<u>Id.</u> at 16-17.)

Alternatively, Plaintiffs argue that even if they were

careless in maintaining access to the system, "this would

not warrant severe spoliation sanctions." (<u>Id.</u> at 17.)

In their reply, the Forestar Defendants cite the

Vansants' testimony to support their contention that the

cameras were in place for up to six months and to

support their claim that Plaintiffs misstated the timeline for

the cameras.  (Reply Supp. Mot. Sanctions (Docket Entry

No. 104) at 1-3.)   The Forestar Defendants argue that

"placing a burden on the Forestar Defendants to establish

the number of days or months the recording system was

in place would be unjust."   (<u>Id.</u> at 4.)   The Forestar

Defendants also take issue with Plaintiffs' timeline, citing

Plaintiff Anthony Coward's deposition testimony and

Plaintiffs' other statements concerning videos.  (Id. at 4-6.)    The   Forestar   Defendants   argue   that   Plaintiffs nonetheless had a duty to preserve the videos, as they anticipated  litigation  when  they  installed  the  camera system.  (Id. at 6-7.)  The Forestar Defendants point out that Plaintiffs produced photos and videos taken shortly after they claimed they installed and removed the camera system, indicating that "Plaintiffs understood that video evidence purportedly taken during this timeframe was relevant to the litigation."    (Id. at 7.)    The Forestar Defendants   complain   that   statements   in   Plaintiffs' affidavits indicate that "the video system was in place and/or that Plaintiffs had access to the video system during the pendency of the case." (Id.)  The Forestar

27

Defendants argue that Plaintiffs anticipated litigation before filing this suit.  (Id. at 7-8.)

The Forestar Defendants argue that Plaintiffs' offer to produce the locked hard drive does not comply with Rule 34, which requires that electronically stored information be produced in a reasonably useable format.  (Reply Supp. Mot. Sanctions at 8-9.)  The Forestar Defendants also contend that failing to produce the password renders the hard drive inaccessible, giving rise to a spoliation inference.  (Id. at 9-10.)  According to the Forestar Defendants, because the videos are inaccessible, the videos are lost for purposes of Rule 37(e).  (Id. at 10.)

The Forestar Defendants argue that they have suffered prejudice, contending that the camera system may have been in place for up to six months.  (Reply

28

Supp. Mot. Sanctions at 10-11.)   The Forestar Defendants argue that they do not have the burden to establish prejudice, and that Plaintiffs instead bear the burden to show a lack of prejudice.  (Id. at 11-13.)

According to the Forestar Defendants, sanctions are warranted.  (Reply Supp. Mot. Sanctions at 13-15.)  The Forestar Defendants contend that, at a minimum, sanctions under Rule 37(e)(1) are warranted.  (Id. at 14.) The Forestar Defendants further argue that "[t]he new evidence suggests that Plaintiffs' conduct may have been more than accidental."  (Id.)  The Forestar Defendants add a new request: that the Court "prohibit Plaintiffs from relying on other videos they have produced."  (Id.)

29

## B.  Analysis

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Marshall v. Dentfirst, P.C., 313 F.R.D. 691, 694 (N.D. Ga. Mar. 24, 2016) (internal quotation marks and citation omitted).  "A party seeking spoliation sanctions must prove that (1) the missing evidence existed at one time; (2) the defendant had a duty to preserve the evidence; and (3) the evidence was crucial to the plaintiff's prima facie case." Id.  "In considering the particular spoliation sanction to impose, courts should consider the following factors: (1) prejudice to the non-spoiling party as a result of the destruction of evidence, (2) whether the prejudice can be cured, (3)

practical importance of the evidence, (4) whether the spoiling party acted in good or bad faith, and (5) the potential for abuse of expert testimony about evidence not excluded."  Id. (internal quotation marks and citation omitted).

"Even if the Court finds spoliation, a sanction of default or an instruction to the jury to draw an adverse inference from the party's failure to preserve evidence is allowed only when the absence of that evidence is predicated on bad faith."  Marshall, 313 F.R.D. at 694 (internal quotation marks and citation omitted).  "A showing of bad faith requires the plaintiff to demonstrate that a party purposely loses or destroys relevant evidence."  Id. (internal quotation marks and citation omitted).  "Mere negligence in destroying evidence is not

sufficient to justify striking an answer." Id. "In determining whether to impose sanctions for spoliation, [t]he court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party." Id. (alteration in original) (internal quotation marks and citation omitted).

"Effective December 1, 2015, Rule 37(e) of the Federal Rules of Civil Procedure was amended to establish the findings necessary to support certain curative measures for failure to preserve electronically stored information." Marshall, 313 F.R.D. at 694 (footnote omitted). The "amendment forecloses reliance on inherent authority or state law to determine when certain measures should be used to address spoliation of electronically stored information." Id. (internal quotation

marks and citation omitted).    Rule 37(e), as amended, provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1)  upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2)  only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A)  presume that the lost information was unfavorable to the party;
>>
>> (B)  instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C)  dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

As an initial matter, the Court finds that Rule 37(e) applies to the videos at issue. See Moody v. CSX Transp., Inc., 07-CV-6398P, --- F. Supp. 3d ---, ---, 2017 WL 4173358, at *10 (W.D.N.Y. Sept. 21, 2017) ("Although the laptop itself is tangible evidence, the electronic information stored within the laptop is the relevant evidence. . . . It is the loss of the electronic evidence stored on the laptop that gives rise to this dispute—one that falls squarely within the scope of Rule 37(e)."). Here, despite Plaintiffs' arguments, the missing electronically stored information--the videos--existed at one time and are no longer accessible due to Plaintiffs' forgetting the password. The Court finds that the videos have indeed been spoliated. See Brown Jordan Int'l, Inc.

34

v. Carmicle, 2016 WL 815827, at *38 (S.D. Fla. Mar. 2, 2016) ("In failing to provide the password or PIN required to unlock the Company-owned laptop . . . , Carmicle rendered that laptop inaccessible."); see also Moody, 2017 WL 4173358, at *12 ("[A] party's failure to maintain electronic data in an accessible format may constitute sanctionable conduct.").[5]

---

[5] Simply offering to provide the locked hard drive to the Forestar Defendants does not comply with Plaintiffs' duty under Federal Rule of Civil Procedure 34(b)(2)(E)(ii) to produce electronically stored information "in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii); see also D'Onofrio v. SFX Sports Grp., Inc., 254 F.R.D. 129, 134 (D.D.C. Oct. 29, 2008) (noting that counsel "cannot be suggesting that it would make any sense to produce e-mails that no one can read or use," and stating that "if electronically stored information is newly discovered by plaintiff's expert's search, defendants are obliged to restore the items during the search, if such restoration is necessary to render the electronically stored information 'reasonably usable,' capable of being read on a computer using either commonly available word processing software . . . and without the necessity of having to buy other software because

The Court need not determine whether Plaintiffs installed and removed the cameras before they retained counsel and filed this litigation. It is clear from the record, including Plaintiffs' other videos taken before Plaintiffs filed this lawsuit, that Plaintiffs anticipated litigation when they installed and removed the cameras. The Court therefore finds find that Plaintiffs had a duty to preserve that evidence. See Marten Transp., Ltd. v. Platform Advert., Inc., Case No. 14-CV-02464-JWL-TJJ, 2016 WL 492743, at *5 (D. Kan. Feb. 8, 2016) ("With respect to timing, the duty to preserve definitely exists upon the filing of a lawsuit, but the duty may arise even before a lawsuit is filed if a party has notice that future litigation is

---

only that software renders the restored e-mail." (footnote omitted)).

likely.    Notice invoking a duty to preserve may be triggered by different events, but most commonly, a party is deemed to have such notice if the party has received a discovery request, a complaint has been filed, or any time a party receives notification that litigation is likely to be commenced." (internal quotation marks and footnotes omitted)); see also Marshall, 313 F.R.D. at 695 (noting that, although the duty to preserve usually arises when the complaint is filed, it can arise earlier "at the point where relevant individuals anticipate becoming parties in imminent litigation" (internal quotation marks and citation omitted)).

The Court also must determine whether Plaintiffs took reasonable steps to preserve the videos at issue. "Due to the ever-increasing volume of electronically

37

stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible." Marten Transp., Ltd., 2016 WL 492743, at *4. "[T]he routine, good-faith operation of an electronic information system would be a relevant factor for the court to consider in evaluating whether a party failed to take reasonable steps to preserve lost information, although the prospect of litigation may call for reasonable steps to preserve information by intervening in that routine operation." Id. "This rule recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection." Id.

The Court finds that Plaintiffs failed to take reasonable steps to preserve access to the videos at

38

issue.  While memory of passwords may fade over time, Plaintiffs' actions here were not clearly reasonable.

The Court next must determine whether to impose sanctions.   "Rule 37 provides two paths for imposing sanctions, detailed in subsections (e)(1) and (e)(2)." O'Berry v. Turner, Civil Action Nos. 7:15-CV-00064-HL, 7:15-CV-00075-HL, 2016 WL 1700403, at *3 (M.D. Ga. Apr. 27, 2016).   "Each subsection carries different requirements and available sanctions." Id.

"To impose sanctions under Rule 37(e)(1), the court must find that the opposing party was prejudiced by the loss of the [electronically stored information]."  O'Berry, 2016 WL 1700403, at *3.  "If the court finds that a party is prejudiced by the failure to preserve, the court has broad discretion to impose sanctions, but 'may order measures

no greater than necessary to cure the prejudice.'" Id. (quoting Fed. R. Civ. P. 37(e)(1)). "Subsection (e)(1) does not limit the court to specific sanctions, but does provide some examples of sanctions that the court might impose." Id. "The advisory committee notes explain that the court could: (1) not allow the party responsible for the destruction of the [electronically stored information] to introduce any evidence about that data; (2) allow the party prejudiced to introduce evidence or make an argument to the jury regarding the effect of the loss of the [electronically stored information]; or (3) give instructions to the jury to assist them in evaluating the evidence introduced or arguments made regarding the [electronically stored information]." Id. "The only limitations on the sanctions available to the court are that

40

the measure ordered must be no greater than necessary to cure the prejudice." Id.

The Court finds that the loss of the videos is prejudicial to the Forestar Defendants. Certainly, the videos at issue would be helpful in evaluating the merits of the Parties' positions. Under those circumstances, the loss of the videos is prejudicial to the Forestar Defendants. Plaintiffs' arguments concerning the Forestar Defendants' failure to show prejudice are not persuasive, as courts have concluded that the party accused of spoliating evidence, not the party moving for spoliation sanctions, bears the burden of showing the lack of prejudice. See Ala. Aircraft Indus., Inc. v. Boeing Co., 319 F.R.D. 730, 742 (N.D. Ala. Mar. 9, 2017) ("[I]n spoliation cases, courts must not hold the prejudiced

party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of evidence." (internal quotation marks and citation omitted)); id. at 743 ("While the burden of establishing prejudice generally falls on the party seeking sanctions, the court is cognizant that AAI will likely never be able to prove what was contained in the destroyed evidence.  In such a situation, only the party that engaged in the destruction knows how much prejudice has been caused (or potentially caused) by the destruction. (citation omitted)); Taylor v. Mitre Corp., Civil Action No. 1:11-CV-1247, 2012 WL 5473573, at *3 (E.D. Va. Nov. 8, 2012) ("[A] party moving for sanctions based on spoliation is not required to prove the content of deleted documents.  That

42

burden falls to the accused spoliator." (citations omitted));

Brown v. Chertoff, 563 F. Supp. 2d 1372, 1379 (S.D. Ga.

June 18, 2008) ("To require a party to show, before

obtaining sanctions, that unproduced evidence contains

damaging information would simply turn 'spoliation law'

on its head." (emphasis in original)).  Further, given that

we do not know what may be on the videos and that the

videos may depict rain events that occurred before

certain measures were taken, it is not clear that the

allegedly spoliated information can be replaced through

additional discovery or by the other videos that Plaintiffs

produced.  See Ala. Aircraft Indus., Inc., 319 F.R.D. at

743 ("Because the information at issue is not even

identifiable, and certain other ESI was not preserved, the

allegedly spoliated ESI cannot be restored or replaced

through additional discovery."). Here, the Court finds that the videos depicted at least some rain event and would be relevant to Plaintiffs' claims or the Forestar Defendants' defenses. The Court therefore concludes that the Forestar Defendants have suffered prejudice from the loss of the videos.

The Court, however, declines to impose sanctions under Rule 37(e)(2), because the Forestar Defendants have not shown that Plaintiffs acted in bad faith or with intent to deprive the Forestar Defendants of the use of the information in this litigation.[6] Certainly, Plaintiffs could have taken greater care to preserve the password for the

---

[6] "Unlike subsection (e)(1), subsection (e)(2) does not require a finding that the opposing party was prejudiced by the failure to preserve the electronically stored data. Prejudice is inferred by the court's finding of intent." O'Berry, 2016 WL 1700403, at *4 (citations omitted).

44

camera system. At most, however, the evidence indicates that Plaintiffs were negligent or careless. Negligence on Plaintiffs' part, however, is not sufficient to allow the Court to draw an adverse inference against Plaintiffs or to give an adverse jury instruction against Plaintiffs under Rule 37(e)(2). See O'Berry, 2016 WL 1700403, at *4 (noting that Rule 37(e)(2) "only applies if the Court finds that the party failed to preserve the data intentionally, in order to deprive the opposing party of its use in litigation" (emphasis in original)); see also Storey v. Effingham Cty., CV415-149, 2017 WL 2623775, at *4 (S.D. Ga. June 16, 2017) ("Rule 37(e) reserves the harshest discovery sanctions, such as adverse inference instructions, dismissals, or default judgments, only for cases in which the court can 'fin[d] that the [spoliating]

45

party acted with the intent to deprive another party of the information's use in the litigation.'" (alterations in original) (quoting Fed. R. Evid. 37(e)).

The Court must determine what sanctions to impose under Rule 37(e)(1).  Importantly, "[d]istrict courts have broad discretion to impose sanctions."  Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh, Civil Action File No. 1:12-CV-3096-MHC, 2015 WL 11199154, at *2 (N.D. Ga. Feb. 3, 2015).  "Spoliation sanctions may include dismissal, exclusion of testimony, or an instruction to the jury to presume that the evidence would have been unfavorable to the spoliator." Storey, 2017 WL 2623775, at *2.

After considering the circumstances and the evidence in the record, the Court finds that the

46

appropriate sanction is to allow the Forestar Defendants to introduce evidence concerning the loss of the videos and to make an argument to the jury concerning the effect of the loss of the videos.  See Storey, 2017 WL 2623775, at \*5 (issuing sanctions for spoliation of videos in the form of having the court tell the jury that the videos were not preserved, allowing the parties to present evidence and argument at trial regarding the destruction of, or failure to preserve, the videos, and precluding evidence or argument that the contents of the videos corroborated the defendants' version of events); see also Jenkins v. Woody, Civil Action No. 3:15CV355, 2017 WL 362475, at \*18 (E.D. Va. Jan. 21, 2017) (ordering similar sanctions for an automatically overwritten video); Jain v. Memphis Shelby Cty. Airport Auth., No. 08-2119-STA-

dkv, 2010 WL 711328, at *5 (W.D. Tenn. Feb. 25, 2010) (granting the plaintiff's request for a jury instruction concerning a permissible inference that a missing video would have contained evidence unfavorable to Defendants). The Court declines to draw an adverse inference against Plaintiffs or to issue a jury instruction directing the jury that it must presume that the missing videos would be adverse to Plaintiffs or favorable to the Forestar Defendants. The Court also rejects the Forestar Defendants' request that the Court preclude Plaintiffs from presenting any video evidence at all.

The Court declines to require Plaintiffs to pay the Forestar Defendants' attorney's fees associated with the Motion for Sanctions. The Forestar Defendants and their counsel do not appear to have engaged in any real effort

to confer and resolve this dispute before racing to the Court with it. At most, the Forestar Defendants' counsel has exchanged a volley of letters and e-mails with Plaintiff's counsel. This is not a serious, good faith attempt to confer, and the Court will not reward it by requiring Plaintiffs to pay the Forestar Defendants' attorney's fees.

In sum, the Court finds that spoliation has occurred, and that sanctions against Plaintiffs are warranted under Rule 37(e)(1). The Court, however, cannot conclude that Plaintiffs acted in bad faith or with intent to deprive the Forestar Defendants of the videos at issue. The Court also finds that the sanctions requested by the Forestar Defendants are too drastic. Instead, the Court will simply allow the Forestar Defendants to introduce evidence

49

concerning the loss of the videos and to make an argument to the jury concerning the effect of the loss of the videos.

## III.  Conclusion

ACCORDINGLY, the Court **GRANTS IN PART AND DENIES IN PART** the Forestar Defendants' Motion for Sanctions [97].  The Court **GRANTS** the Motion only insofar as the Court will allow the Forestar Defendants to introduce evidence concerning the loss of the videos and to make an argument to the jury concerning the effect of the loss of the videos.  The Court **DENIES** the Motion in

all other respects.

IT IS SO ORDERED, this the 30 day of November, 2017.

_____

SENIOR UNITED STATES DISTRICT JUDGE